UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEROME HILSON,
                                              Plaintiff,
       vs.                                                                   9:09-CV-1373
                                                                                    (NAM/ATB)
M. MALTESE, et al.,
                                              Defendants.
_____

LEROME HILSON, Plaintiff *pro se*
MEGAN M. BROWN, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred for Report and Recommendation on March 8, 2010 by Chief U.S. District Judge Norman A. Mordue, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c). The case was reassigned to me by Chief Judge Mordue on November 2, 2010. (Dkt. No. 26).

In this civil rights complaint, plaintiff alleges that he was "sexually assaulted" by defendant Maltese and "physically abused" by the other three correction officers during a "strip frisk" at Five Points Correctional Facility ("Five Points") on June 12, 2008. (Dkt. No. 1). Plaintiff seeks substantial monetary damages.

Presently before the court is defendant's motion to dismiss the action for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 18). Defendants argue that (1) plaintiff's conclusory allegations fail to state a cause of action; (2) plaintiff failed to exhaust his administrative remedies; and (3) the defendants are entitled to

qualified immunity.  (Defts.' Memo. of Law, Dkt. No. 18-1).  Plaintiff has responded in opposition to the motion and was permitted to supplement his response.  He argues, *inter alia*, that the exhaustion requirement should be excused in his case.  (Dkt. No. 19 at 2; Dkt. No. 28 at 3).  This court agrees with defendants that the plaintiff has failed to exhaust his administrative remedies without adequate excuse, and recommends dismissal of the complaint on that basis.[1]

## DISCUSSION

### I. Facts and Procedural History

The complaint alleges, in very conclusory terms, that, on June 12, 2008, plaintiff was "sexually assaulted by a C.O. [Correction Officer] Maltese and physically abused by Sgt. Elsenheimer, C.O. Dinkins, and C.O. Ryder."  The only pertinent detail alleged is that "C.O. Maltese was looking at me in a strange way. . . ."  (Compl., Dkt. No. 1 at 4).

Attached to the complaint is a Department of Correctional Services ("DOCS") Unusual Incident Report, which describes a "strip frisk" of plaintiff performed by C.O. Maltese, with the approval of Sgt. Elsenheimer, after defendant Maltese observed plaintiff "walking in an unusual manner" and discovered "an unidentifiable bulge in [plaintiff's] groin area."  During the strip frisk, the defendants used force to subdue

---

[1] As noted briefly below, the court also finds that plaintiff's conclusory allegations fail to state an Eighth Amendment claim.  Given the recommendation with respect to plaintiff's failure to exhaust administrative remedies, the court need not address defendants' argument regarding qualified immunity.  The defendants also moved for a stay of discovery pending resolution of the motion; no discovery will be permitted pending the District Court's consideration of this Report Recommendation.

and restrain plaintiff when he reportedly refused to follow instructions to lift his penis and testicles, became irate, and raised closed fists towards defendant Maltese. C.O. Maltese then completed the strip frisk, using gloved hands to separate plaintiff's buttock cheeks. The strip frisk resulted in the discovery and seizure of 21 concealed contraband cigarettes. (Dkt. No. 1-1 at 3-4). The DOCS report and medical records, also attached to the complaint, document that plaintiff, as a result of this incident, suffered a 5 cm. raised area on his right eyebrow and a 5 cm. swollen and red open area on his right cheek. (Dkt. No. 1-1 at 1, 4).

In his complaint, plaintiff states that, although there was a grievance procedure at Five Points, he did not file a grievance because "I was mentally unstable at the time" and because "I had a mental break down." (Dkt. No. 1 at 2-3). The only support provided for these claims is a DOCS list of plaintiff's medications (attached to the complaint), one of which can be prescribed to treat anxiety disorder, although it is more commonly used as a blood pressure medication. (Dkt. No. 1-1 at 1-2).[2]

Plaintiff attached other documents to his response to defendants' motion to dismiss, which provide more information about his apparent failure to exhaust his administrative remedies with respect to the alleged sexual and physical assault on June

---

[2] Plaintiff was being treated with propranolol/inderal–a beta blocker most commonly prescribed for high blood pressure and coronary artery disease, but which is sometimes used to treat certain anxiety disorders. See http://www.medicinenet.com/propranolol/article.htm; http://anxietyhelp.org/treatment/medication/inderal.html. To the extent the handwriting on these medical records is legible, none of the other drugs prescribed for plaintiff seem to relate to mental health problems. Plaintiff attached to his complaint, information about a drug named Celexa, classified as an anti-depressant (Dkt. No. 1-1 at 6-9), but this drug does not appear to be referenced in the attached DOCS medical records (Dkt. No. 1-1 at 1-2).

12, 2008. Plaintiff claims that, for some time after the incident, he was confined in a contraband room where he did not have access to any writing materials necessary to draft a grievance. However, "when plaintiff did have access to said materials and was thinking more clearly, plaintiff did file a grievance and tried to exhaust the administrative means . . . ." (Dkt. No. 19 at 2). Plaintiff attached, to his motion response, an Inmate Grievance dated 9/29/09 complaining about the June 12, 2008 incident. On the grievance form, plaintiff claims that he is mentally ill and still taking medication.[3] He then states: "Two weeks after the incident I wrote a complaint upon [sic] the grievance office, which I never received any reply while I was at 5 Points." (Dkt. No. 19 at 5). The September 2009 grievance was denied because it was not received within 21 days of the alleged occurrence, as required by DOCS directives. (Dkt. No. 19 at 6).

In his opposition papers, plaintiff also included a notice of claim he allegedly served at Five Points on July 24, 2008, in which he elaborates on his claims regarding the June 12th incident. (Dkt. No. 19 at 8-14). Plaintiff states, in this document, that he filed a grievance at Five Points prior to being transferred to another facility, but claims that he had not yet received an answer. (Dkt. No. 19 at 12).

## II.   <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its

---

[3] Plaintiff's responses to the motion provide no further factual support for his claim that he was being treated for mental illness by DOCS. (Dkt. Nos. 19, 28).

face." *Ashcroft v. Iqbal*, \_ U.S. \_, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat *pro se* pleadings with liberality.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).  In this case, plaintiff attached a significant number of documents to his amended complaint and to his responses to defendants' motion, all

5

of which this court has considered in making its recommendation.

The court agrees with defendants that the conclusory allegations in the complaint fail to state a claim for use of excessive force[4] and "sexual assault"[5] under the Eighth Amendment, and that the complaint could be dismissed, without prejudice, on that basis. However, as discussed below, this action is also subject to dismissal, with prejudice, based on plaintiff's failure to exhaust administrative remedies, so the court need not rely on the deficiencies in the pleading of the Eighth Amendment

---

[4] The Eighth Amendment protects an inmate from cruel and unusual punishment through the "unnecessary and wanton infliction of pain." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)). In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff does not present any factual details, beyond conclusory allegations of physical "abuse" and "assault," either in the complaint or the various documents he has submitted (Dkt. Nos. 1-1, 19, 28). *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning") (citations omitted). Plaintiff has not alleged any facts to counter the DOCS reports of the June 12, 2008 incident, which indicate that the force applied to plaintiff did not exceed what was reasonably necessary to subdue him and complete an appropriate strip frisk, once plaintiff became belligerent and began to resist. *See Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("In an excessive-force case, whether conduct was "wanton" turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

[5] The court notes that numerous courts have held that allegations of sexual abuse during frisk searches do not implicate the Eighth Amendment. *See Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Montero v. Crusie*, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); *Williams v. Keane*, No. 95 Civ. 379, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

claims in recommending dismissal of the complaint.

### III.   Exhaustion of Administrative Remedies

#### A.   Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules.  *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[6] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion

---

[6] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some speculation.[7] Although the Second Circuit has not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 Fed. Appx. 397, 399 (2d Cir. 2009).[8] As discussed below, this court finds that plaintiff has not shown that the exhaustion requirement should be excused, and thus, plaintiff's case should be dismissed regardless of whether exceptions to the exhaustion requirement continue to exist after *Woodford*.

---

[7] See, e.g., *Newman v. Duncan*, 04-CV-395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 285-86 n.7 (S.D.N.Y. 2009).

[8] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have **not** been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

9

B.     Application

Based on the allegations that plaintiff has made at various times about his efforts to exhaust his administrative remedies with respect to the June 12, 2008 incident, it is clear that administrative remedies were available to him, and that he failed to pursue these remedies consistently with DOCS requirements. The complaint alleged that, although Five Points had a grievance procedure, plaintiff failed to pursue a grievance because of purported mental health problems.  Because plaintiff provides no factual support for his alleged mental breakdown in the aftermath of the incident, this does not constitute a "special circumstances" excusing his failure to exhaust. *See, e.g., Newman v. Duncan*, 2007 WL 2847304, at *4 (failing to exhaust remedies due to claimed, but undocumented, mental illness is not a special circumstance).

In any event, the additional information plaintiff provided in connection with his opposition papers makes clear that, whatever mental health issues he had, they did not cause his failure to pursue a grievance at Five Points. *See, e.g., Bennett v. James*, __ F. Supp. 2d __, 08 Civ. 9979, 2010 WL 3583410, at *8 (S.D.N.Y. Sept. 16, 2010) (even assuming that an inmate's physical or mental condition could excuse exhaustion, or might equitably toll the deadline for filing a grievance, the inmate plaintiff has not made a sufficient showing that his purported incapacity was the reason he did not pursue a grievance).  As plaintiff states in the documents described above, after two weeks of confinement in the contraband room at Five Points, he was released to general population and was able to file a timely grievance, to which he claims he

received no reply.⁹ Plaintiff does not contend, however, that he filed an appeal after he received no reply to his grievance. Courts have consistently held that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement. *See e.g. Veloz v. New York*, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (plaintiff's allegations that his grievances were misplaced or destroyed by corrections officers ultimately does not relieve him of the requirement to appeal those claims to the next level once it became clear that no response was forthcoming) (citing *Martinez v. Willaims*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002) (same). "If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA." *Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.).¹⁰

Plaintiff has provided a copy of a grievance that he filed, on September 29, 2009, substantially more than 21 days after the incident–the deadline established by

---

⁹ Shortly thereafter, plaintiff served a lengthy notice of claim on DOCS at Five Points (Dkt. No. 19 at 8-14), further indicating that his mental condition in the summer of 2008 would not have prevented him from filing a timely grievance in the proper form, or from pursuing any appropriate administrative appeals. A notice of a state law claim is not a proper substitute for a grievance and does not serve to exhaust plaintiff's administrative remedies. See, e.g., *Rowe v. Lilly*, 99 Civ. 4317, 2000 WL 1677710, at *2 (S.D.N.Y. Nov. 8, 2000); *Harris v. Bowden*, 03 Civ. 1617, 2006 WL 738110, at *6-7 (S.D.N.Y. Mar. 23, 2006)

¹⁰ The New York regulations specifically state that if a grievance is not decided within the time limits provided, the inmate may appeal to the next step. 7 N.Y.C.R.R. § 701.6(g)(ii)(2). In *Pacheco v. Drown*, 9:06-CV-20, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010), U.S. District Judge Glenn Suddaby held that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Accord, Murray v. Palmer*, 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, *2 & nn. 4, 6 (N.D.N.Y. March 31, 2010).

DOCS rules.  It is clear from the authority cited above that inmates do not properly exhaust their administrative remedies when their grievances were dismissed because they have missed the deadlines set forth in the grievance procedure.  *Woodford v. Ngo*, 548 U.S. at 93.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 18) be **GRANTED and the complaint be DISMISSED IN ITS ENTIRETY** based on plaintiff's failure to exhaust his administrative remedies, and it is further

**ORDERED**, the discovery is stayed pending the District Court's ruling on this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 5, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge