_____

LEROME HILSON,

                        Plaintiff,

       vs.                                          9:09-CV-1373
                                                           (NAM/ATB)

M. MALTESE, et al.,

                        Defendants.

_____

LEROME HILSON, Plaintiff *pro se*
MEGAN M. BROWN, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred for Report and Recommendation on March 22, 2012 by U.S. District Judge Norman A. Mordue, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In his amended civil rights complaint, plaintiff alleges that Corrections Officers Maltese, Ryder, and Dinkins physically and sexually assaulted him, and/or failed to intervene to protect him, during a "strip frisk" at Five Points Correctional Facility ("Five Points") on June 12, 2008. (Amended Complaint ("AC"), Dkt. No. 37). Plaintiff seeks substantial monetary damages and injunctive relief. (*Id.*).[1]

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 51, 52). Plaintiff opposes defendants'

---

[1] The amended complaint also included claims against several John or Jane Doe defendants; but plaintiff subsequently moved to withdraw his claims against the unidentified defendants, which motion Judge Mordue granted. (Dkt. Nos. 47, 48).

motion. (Dkt. No. 54).² Defendants argue that (1) defendants did not violate plaintiff's Eight Amendment rights because their use of force against him was de minimis and was applied in a good faith effort to maintain or restore discipline, not maliciously and sadistically; (2) plaintiff's misconduct was the proximate cause of the minor injuries that he suffered; and (3) the defendants are entitled to qualified immunity. (Def.s' Memo. of Law at 1, Dkt. No. 51-10). Based on the record, including a videotape of the entire incident, this court concludes that no rational fact finder could conclude that plaintiff has established an Eighth Amendment claim for excessive force or sexual assault. Accordingly, this court recommends that defendants' motion for summary judgment be granted and that plaintiff's amended complaint be dismissed in its entirety.

## DISCUSSION

**I. FACTS**

Plaintiff alleges that, on June 12, 2008, he and other inmate mess hall workers were going, as ordered, to pick up food service carts when he encountered defendant Maltese. Plaintiff alleges that C.O. Maltese ordered plaintiff to submit to a pat frisk, using degrading language. (AC, Dkt. No. 37 at 6).³ Defendant Maltese and a

---

² Plaintiff also filed a letter which the Clerk construed as a motion for a temporary restraining order/preliminary injunction. (Dkt. No. 57). After the defendants filed opposition to that motion (Dkt. No. 58), plaintiff advised the court that he did not intend to move for injunctive relief and withdrew the motion (Dkt. No. 59).

³ Because plaintiff organized his amended complaint without consecutive paragraph or page numbers, the court will reference the page numbers assigned by the court's Case Management/Electronic Filing system.

correction sergeant (identified in the amended complaint only as "John Doe") then escorted plaintiff to a separate room to conduct a strip frisk. (*Id.*). Plaintiff alleges that C.O. Maltese continued to act unprofessionally, and that a female correction officer kept coming into the room, making plaintiff "very uncomfortable." However, Sgt. Doe refused plaintiff's request that another correction officer take over the strip frisk. (AC at 6-7).

Plaintiff alleges that, although he complied with the officer's directions in connection with the ensuing strip frisk, C.O. Maltese and Sgt. Doe pushed plaintiff against the wall and began to assault him by, *inter alia*, hitting him in the face. (AC at 7). Plaintiff was forced to the floor and placed in handcuffs and leg restraints. C.O. Maltese then allegedly sat on plaintiff's back "and used his hands to spread open my buttcheeks attempting to stick his finger in my anus then fondling my scrotum by holding it and squeezing it while smacking my ass; resulting in sexual assault . . . ." (*Id.*). Plaintiff alleges that C.O. Ryder and C.O. Dinkins were present during the stip frisk and used excessive force against the plaintiff and/or failed to intervene to protect him from the physical and sexual assault. (AC at 7, 9).

The amended complaint alleges that plaintiff suffered nightmares and fear as a result of this incident, causing him to seek psychiatric treatment. (AC at 8). During his deposition, plaintiff described his physical injuries to include swelling on his lips and bruising on his face, back, side, arm, and wrists. (Plf.'s Dep. at 32, 36, 45, Dkt. No. 51-5).

The declarations and reports of C.O. Maltese and other employees of the

Department of Corrections and Community Supervision ("DOCCS") describe the incident on June 12, 2008 quite differently. C.O. Maltese conducted a strip frisk of plaintiff, with the approval of Sgt. Elsenheimer, after defendant Maltese observed plaintiff "walking in an unusual manner" and discovered, during a pat frisk, "an unidentifiable bulge in [plaintiff's] groin area." (Unusual Incident Rept., Dkt. No. 52-1 at 11-13; Use of Force Report, Dkt. No. 52-1 at 14; 6/12/2008 Maltese Mem., Dkt. No. 52-1 at 30-32; Maltese Decl., Dkt. No. 51-7).

During the strip frisk, the defendants used force to subdue and restrain plaintiff when he reportedly refused to follow instructions to lift his penis and testicles, became irate, and raised closed fists towards defendant Maltese. (*Id.*; 6/12/08 Elsenheimer Mem., Dkt. No. 52-1 at 36-37; Dinkins Decl., Dkt. No. 51-8; Ryder Decl., Dkt. No. 51-9). As discussed below, the videotape, while it does not clearly show every detail of this frenetic incident, strongly corroborates the defendants' version of plaintiff's conduct before force was used by the correction officers. After plaintiff was restrained on the floor, C.O. Maltese then completed the strip frisk, using gloved hands to separate plaintiff's buttock cheeks. (6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.). The DOCCS reports and medical records, including color photographs of plaintiff taken shortly after the incident, document that plaintiff suffered only a 5 cm. raised area on his right eyebrow and a 5 cm. swollen and red open area on his right cheek. (Dkt. No. 52-1 at 15-23).

The strip frisk resulted in the discovery and seizure of 21 concealed contraband cigarettes, which reportedly fell to the floor when plaintiff removed his pants, and a

rolled-up brown paper towel found between plaintiff's buttocks. (Maltese Decl. ¶¶ 17-18, 28; 6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.; photograph logs and photographs of contraband, Dkt. No. 52-1 at 24-26). As a result of the incident, plaintiff was issued a misbehavior report charging him with creating a disturbance, refusing to obey a direct order, harassment, smuggling contraband, violating search and frisk policies, and destruction of state property. (Dkt. No. 54-2 at 125-27).

A transcript of the disciplinary hearing indicates that plaintiff pled guilty to all charges, acknowledging that he "f—ed up" and that the situation "escalated and got out of proportion." (Dkt. No. 54-2 at 131-35). During his deposition, plaintiff denied that he had any contraband on June 12, 2008, denied that he pled guilty to the charges at the hearing, and claimed that what really happened at the hearing was being covered up. (Plf.'s Dep. at 65-70). Plaintiff acknowledged that he did not appeal the guilty disposition on the disciplinary charges, despite his professed innocence. (*Id.;* Dkt. No. 54-2 at 128-29).

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must

be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

### B. Eighth Amendment

#### 1. Excessive Force

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth

Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount

7

of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 2. Sexual Abuse

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie v. Schnieder*, 105 F.3d 857, 860, 861 (2d Cir. 1997). The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may be potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions . . . ." *Id*. at 861-62.

### 3. Failure to Intervene

A correction officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate. *See, e.g., Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. May 24, 2010)*; Cicio v. Graham,* No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. March 15, 2010). A law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *Id*.[4] In order to establish

---

[4] *See also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be."); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence").

liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Id.; Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted).

### III. ANALYSIS

There is no dispute that the defendants applied force to plaintiff during the course of a strip frisk on June 12, 2008. Defendant Maltese contends that, when he ordered plaintiff to lift his penis and testicles as part of the strip frisk procedure, plaintiff grabbed his penis and shook it at the officer, saying "F— you, I'm not doing another thing for you!" (Maltese Decl. ¶ 20; 6/12/2008 Maltese Mem. at 2). C.O. Maltese alleges that plaintiff was yelling and waving his arms and that he raised his right arm and a clenched fist level with the officer's face. (Maltese Decl. ¶¶ 21-22; 6/12/2008 Maltese Mem. at 2-3). Defendant Maltese states that he began to fear for his safety and determined that he needed to gain control of the plaintiff before the situation escalated further, so he pushed defendant backward and grabbed plaintiff's head and neck to force him to the floor. (Maltese Decl. ¶ 23-24; 6/12/2008 Maltese Mem. at 3). Other officers then began to assist C.O. Maltese in subduing plaintiff and placing him in restraints, after which defendant Maltese completed the strip frisk, by spreading plaintiff's buttocks while he was lying face down on the floor. (Maltese Decl. ¶ 25-28; 6/12/2008 Maltese Mem. at 3).

9

During his deposition, plaintiff conceded that "he never really wanted to comply with the rest of [the strip search]," and that C.O. Maltese directly ordered him to comply "numerous" times. (Plf.'s Dep. at 30-31). Plaintiff claimed that he did not lift his hands up to cause any physical harm to the correction officer. (Plf.'s Dep. at 30). He contends that once the officers had him in a body hold, he did not resist. (Plf.'s Dep. at 39). Plaintiff further alleged that defendant Maltese punched him repeatedly, seven to eight times, in the face and that plaintiff was also kicked. (Plf.'s Dep. at 35, 45). During his October 2011 deposition, plaintiff acknowledged that the video of the June 12, 2008 incident, which he last viewed in 2009, was an "accurate depiction of what happened." (Plf.'s Dep. at 41, 72).[5]

This court has carefully reviewed the surveillance video of the June 12, 2008 incident at Five Points, which shows the approximately 30 minutes while plaintiff was in the strip frisk room with C.O. Maltese and others, without any audio.[6] The plaintiff

---

[5] In his July 24, 2008 Notice of Intention to File Claim, plaintiff claims that he "was assaulted by the officers off camera." (Dkt. No. 54-2 at 27). Plaintiff has consistently alleged that the officers who assaulted him were C.O. Maltese and "Sgt. Doe" (who was presumably Sgt. Elsenheimer). In his deposition, plaintiff acknowledges that he was escorted from the strip frisk room after the incident by officers other than Maltese and the sergeant. (Plf.'s Dep. at 42). The video tape, which has a running time signature by hour, minute, and second, shows the entire incident, from plaintiff's escort into the strip frisk room by C.O. Maltese to his escort out of the same room by other officers, with no apparent gaps during which plaintiff might have been assaulted "off camera."

[6] The video shows the output of four cameras at different points in and around the strip frisk room at Five Points. Most of the relevant portions of the video show plaintiff on camera no. 4 in the strip frisk room, although he is briefly seen on other cameras as he was escorted into and out of the strip frisk room. Defense counsel provided a CD with several video files, some of which consist of only portions of the incident and some of which did not play, at least on the programs available to me. However, the file "VIDEO_TS.IFO" shows the entire incident.

began to remove his clothes, as directed by C.O. Maltese, at approximately 1:25:30.[7]
Just prior to taking off his boxer shorts, starting at 1:28:24, the plaintiff waved his arms and turned his head to C.O. Maltese. At about 1:29:15, the plaintiff used his right hand to shake his penis towards the officer, in apparent irritation. The plaintiff, facing C.O. Maltese, again started to wave his arms at the officer, while saying something forcefully to him. (Video, 1:29:22). With C.O. Maltese holding his left hand, palm down, towards the plaintiff, the inmate appeared to shout and continued to wave raised arms and hands, at times with fists clenched. (Video, 1:29:38). Over the next 30 seconds or so, while C.O. Maltese continued to use his hand, palm down, in an apparent effort to calm the plaintiff, the inmate made several more forceful comments to C.O. Maltese, waved his arms several more times in an agitated fashion, and leaned in toward the officer once. (Video, 1:29:53). At approximately 1:30:08, just after plaintiff appeared to say something further to C.O. Maltese while shaking his head from side to side, the officer pushed plaintiff against the wall, grabbed him around the neck, and pulled him to the floor.

At 1:30:11, three other male correction officers rush into the room and positioned themselves at various positions around plaintiff's body on the floor. From the movement of the four officers over the next minute or so, it is apparent that the plaintiff was still struggling. At 1:30:20, the female officer handed C.O. Maltese something, presumably restraints. At approximately 1:30:44 and 1:30:56, while the

---

[7] As noted, the video image has a running time stamp, which apparently corresponds to the time in the afternoon when the incident took place.

plaintiff still appeared to be resisting, a correction officer other than C.O. Maltese punched plaintiff with his right fist a total of five times, but without lifting his arm to a great extent or appearing to use substantial force.[8] There is no indication on the video that anyone kicked the plaintiff and, given the small size of the strip frisk room and the positions of the four officers who were kneeling or stooping over the plaintiff, they would not have been in a position to strike plaintiff with their feet with any force. By 1:31:26, two of the officers stood, and the more relaxed posture of the other two officers indicates that the plaintiff had stopped struggling and had presumably been placed in restraints. The officers then moved plaintiff's position on the floor. (Video, 1:32:00).

Over the next few minutes, while plaintiff remained face down on the floor, several officers came in and out of the room, some putting on latex gloves. While it is not entirely clear at what point C.O. Maltese completed the strip frisk, that appeared to happen at some point between 1:35:30 and 1:38:10. The correction officers then put some clothes on or over plaintiff while he was still on the floor (Video, 1:39:00) and then help him back onto his feet (Video, 1:39:58). Shortly thereafter, the officers involved in the strip frisk appeared to be relieved of duty by other officers. For approximately ten minutes, these other officers waited in the strip frisk room with plaintiff–still in restraints and standing against the wall–and then escorted the plaintiff towards the infirmary.

---

[8] In his declaration, defendant Ryder admits striking plaintiff three times in his right elbow with his closed fist after plaintiff refused orders to put his hands behind his back so that restraints could be applied. (Ryder Decl. ¶¶ 8-10).

Based on the record presented in connection with the summary judgment motion, this court concludes that no reasonable fact finder could conclude that the defendants used force against the plaintiff maliciously and sadistically to cause harm, as required to satisfy the subjective element of the Eighth Amendment standards for excessive force. As plaintiff acknowledged in his deposition, he was serving a sentence for second degree murder, following a prior conviction for robbery and assault, and he outweighed the officer who was conducting the strip search by 70 to 80 pounds. (Plf.'s Dep. at 6-7, 34). Notwithstanding the lack of an audio track, the video of the strip search clearly corroborates the statements of C.O. Maltese and others that plaintiff was agitated and was making aggressive gestures with his arms and hands.[9] The deposition testimony of plaintiff, his guilty plea to the various disciplinary charges against him, and the video tape all overwhelmingly corroborate the officers' statements that plaintiff refused to comply with the orders of C.O. Maltese to complete the strip frisk procedure.[10] Under those circumstances, no reasonable juror would

---

[9] The court may rely on the video of the relevant events in concluding that no reasonable fact finder could credit the plaintiff's inconsistent claims about the incident. *See, e.g.*, *Kalfus v. New York and Presbyterian Hosp.*, 476 F. App'x 877, 880-81 (2d Cir. 2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse*, 00–CV–6533, 2009 WL 1401642, at *9 (W.D.N.Y. May 18, 2009) (this court may rely on the video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim) (citations omitted).

[10] Plaintiff's conclusory assertion that the transcript and other records of his disciplinary hearing were completely fabricated is not sufficient to establish a material issue of fact with respect to his admissions of guilt to charges, including violating stip frisk procedures, particularly in light of his failure to appeal. *See, e.g., Proctor v. Kelly*, 9:05-CV-692 (GTS/GJD), 2008 WL 5243925, at *5 (N.D.N.Y. Dec. 16, 2008) (plaintiff's conclusory and unsupported allegations that a defendant tampered with the tape of a disciplinary hearing is not sufficient to overcome

13

question that C.O. Maltese, in forcing plaintiff to the floor, applying restraints, and completing the strip frisk once plaintiff was restrained, acted in a good faith effort to maintain and restore discipline with respect to a dangerous inmate who was acting aggressively and refusing direct orders. *See, e.g.*, *Perkins v. Brown*, 285 F. Supp. 2d 279, 284-85 (E.D.N.Y. 2003) (defendants' use of force to search plaintiff only after he had refused to submit to a search and directed profanity at defendants was clearly not "repugnant to the conscience of mankind," but was a good faith effort to restore discipline and to gain control over a recalcitrant and dangerous inmate); *Johnson v. Woods*, No. 07–CV–1018 (DNH/DRH), 2010 WL 2039164, at *15–16 (N.D.N.Y. Mar. 2, 2010) (given that the officers' declarations and the facility video tapes showed that plaintiff was agitated, combative, and uncooperative, his allegations to the

---

summary judgment dismissing due process claims); *Gill v. Jones*, 95 Civ. 9031, 2001 WL 1346012, at *8-9 (S.D.N.Y. Nov. 1, 2001) (plaintiff's conclusory claim that his appeals of disciplinary hearings must have been tampered with because they were never received is insufficient to avoid summary judgment on an interference-with-mail claim); *Lewis v. Johnson*, 08–CV–0482 (TJM/ATB), 2010 WL 3785771, at *20 (N.D.N.Y. Aug. 5, 2010) (plaintiff's conclusory allegation that multiple medical professionals in two different prisons fabricated plaintiff's medical records to suppress evidence of his alleged injuries is highly suspect and would, in the court's view, be insufficient to sway any rational fact finder) (Report-Recommendation), *adopted*, 2010 WL 3762016 (N.D.N.Y. Sept. 20, 2010). As noted above, plaintiff also denied, during his deposition that he possessed any contraband cigarettes or that he pled guilty to smuggling such contraband. As corroboration of his denial, plaintiff points to the fact that the video tape of the strip frisk does not show the contraband cigarettes falling out of plaintiff's pants. (Plf.'s Dep. at 44). While it is true the video does not show the contraband cigarettes, C.O. Maltese searched plaintiff's pants partly while just out of camera range. (Video, 1:26:45). And, as noted above, there is other documentary corroboration of the seized cigarettes, including photographs of the contraband. (Maltese Decl. ¶¶ 17-18, 28; 6/12/2008 Maltese Mem.; 6/12/08 Elsenheimer Mem.; photograph logs and photographs of contraband, Dkt. No. 52-1 at 24-26). In any event, it is not material to the evaluation of plaintiff's excessive force claims whether or not he was actually found in possession of contraband. His combative refusal to cooperate with a legitimate strip frisk procedure warranted the defendants' forceful response, whether or not the officers eventually found any contraband.

14

contrary raised no issues of material fact that the use of force to extract plaintiff from his cell was the only option to uphold discipline and was reasonably calculated to ensure the safety of the officers); *Cunningham v. Rodriguez*, 01 Civ. 1123, 2002 WL 31654960, at *5-6 (S.D.N.Y. Nov. 22, 2002) (granting summary judgment and dismissing the excessive force claim of a plaintiff who, after disobeying a direct order of the court and using profanity, refused to comply with a court officer's order to step back and place his hands behind his back; because of his resistance, the officers' use of force to subdue him and to escort him out of the courtroom was not "repugnant to the conscience of mankind").

Given the video evidence regarding the extent of the force applied to the plaintiff and the medical evidence of the relatively minor nature of his injuries, no reasonable fact finder could conclude that the force applied to plaintiff was more than de minimis, and thus was insufficient to satisfy the objective element of the Eighth Amendment standards for cruel and unusual punishment. In any event, there is no material issue of fact that the force applied was not greater than reasonably necessary to restore discipline and order under the circumstances encountered by the defendants. *See, e.g.*, *Sprau v. Coughlin*, 997 F. Supp. 390, 394-95 (W.D.N.Y.1998) (plaintiff inmate alleged that the officer grabbed him behind the neck and hit him several times across the neck and face and in the eye, but the medical report noted only a small bump under plaintiff's eye; the court found that the amount of force used was de minimis and did not reach constitutional dimensions); *Bove v. New York City*, 98 Civ. 8800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (the plaintiff's alleged injuries

that are supported by the objective hospital records–a single bruise to head–lead the court to conclude that the force used by the officers on the night in question was at worst, de minimis); *Johnson v. Woods*, 2010 WL 2039164, at *12, 15 (a broken pinky finger on plaintiff inmate's left hand, a slight bump on his head, and a mild head and rib pain are not injuries of sufficient severity, nor worthy of Eighth Amendment protection).

Defendant Ryder's controlled punches to plaintiff's arm while the inmate was struggling on the floor, resisting the officers' attempts to apply mechanical restraints, is clearly a de minimis use of force outside of the protection of the Eighth Amendment. *See, e.g.*, *Allaway v. McGinnis*, 473 F. Supp. 2d 378, 382-83 (W.D.N.Y. 2007) (the four punches delivered to plaintiff (which the officer describes in a sworn declaration as blows administered for the sole purpose of getting plaintiff to comply with the officers) were, as shown on the video, delivered in a deliberate, methodical manner from a relatively short distance, while plaintiff was still struggling and resisting the officers' attempts to place mechanical restraints on him; no rational fact finder could conclude that these punches met either the objective or subjective components of an Eighth Amendment violation). Even if, as plaintiff claims, some of these blows landed on his face, there would be no material issue of fact supporting his claim of excessive force. *See, e.g., Espinal v. Goord*, 00 Civ. 2242, 2001 WL 476070, at *13, n.46 (S.D.N.Y. May 7, 2001) (plaintiffs allegations that officer hit him two or three times in the face, causing his face to turn red, but resulting in no other injuries are insufficient to state an Eighth Amendment claim) (collecting cases); *Cunningham*

*v. Rodriguez*, 2002 WL 31654960, at *5 (blows to back and face held to be de minimis).

With respect to plaintiff's claims of sexual abuse[11] during the strip frisk, such an isolated incident of alleged sexual touching does not involve a harm of federal constitutional proportions. *Boddie v. Schnieder*, 105 F.3d at 861.[12] Numerous courts in this Circuit have held that allegations of isolated sexual abuse during frisk searches do not implicate the Eighth Amendment. *See Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Montero v. Crusie*, 153 F. Supp. 2d 368, 373, 375 (S.D.N.Y. 2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment,

---

[11] Plaintiff's allegations that C.O. Maltese directed racially or otherwise degrading and abusive or profane language toward him during the incident, does not support an Eighth Amendment claim. Verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under . . . § 1983." *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (collecting cases). *See also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (the claim that a prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed).

[12] Plaintiff cites *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 236-38 (S.D.N.Y. 2005) for the proposition that "contemporary standards of decency" relating to alleged sexual assault during a prison pat frisk have become more stringent since the Second Circuit's *Boddie* case. However, the court agrees with other district judges in this circuit who have concluded that *Rodriguez* incorrectly concluded that *Boddie* is not controlling precedent. *See, e.g., Samuels v. Strange*, 3:08-CV-1872, 2012 WL 4754683, at *4 (D. Conn. Oct. 4, 2012) (the holding of *Rodriguez* is inconsistent with Second Circuit precedent, as well as the vast majority of relevant circuit and district court cases); *accord, Harry v. Suarez*, 10 Civ. 6756, 2012 WL 2589080 (S.D.N.Y. July 3, 2012).

especially when inmate did not allege physical injury); *Williams v. Keane*, No. 95 Civ. 379, 1997 WL 527677, at *1, 11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

In sum, based on the conclusive video and medical evidence in the record, plaintiff's inconsistent and/or conclusory allegations regarding the circumstances of the incident during the strip frisk on June 12, 2008; the nature and extent of the force used against him; and the extent of his injuries do not create material issues of fact sufficient to defeat defendants' summary judgment motion. *See Scott v. Harris*, 550 U.S. 372, 379-81 (2007) (when opposing parties tell two different stories, one of which is blatantly contradicted by the record evidence (including surveillance video), so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment)*; Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account"*; Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion

for summary judgment once the moving party has set forth a documentary case"). Accordingly this court recommends that plaintiff's claims of excessive force and sexual abuse under the Eighth Amendment should be dismissed in their entirety. Because of this court's conclusion that no Eighth Amendment violation occurred, this court need not address plaintiff's claim that certain defendants failed to intervene to protect him from such purported violations, or the defendants' claims of qualified immunity.[13]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED** and the remaining claims in the Amended Complaint be **DISMISSED IN THEIR ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

---

[13] In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory" in all cases). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 14, 2012

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge